**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TREVOR WINTERS, | ) |
| | ) |
| *Plaintiff*, | ) Civil Action No. 1:25-cv-00085 |
| | ) |
| | ) Electronically Filed |
| vs. | ) |
| | ) |
| JB LINE CONSTRUCTION, LLC, AND | ) |
| JOSEPH ERICKSON, *individually* | ) |
| *and jointly*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Trevor Winters, by and through the undersigned counsel, files the following

Complaint in Civil Action against Defendants, JB Line Construction, LLC, and Joseph Erickson,

averring as follows:

**THE PARTIES**

1.      Plaintiff, Trevor Winters ("Plaintiff"), is an adult individual who currently resides

in Union City, Pennsylvania.

2.      Defendant, JB Line Construction, LLC ("JBL"), is registered with Pennsylvania's

Department of State (the "DOS") as a limited liability company.  JBL maintains a registered

address within the Commonwealth of Pennsylvania with its principal place of business located at

13250 Cole Road, Atlantic, Pennsylvania 16111 (the "Facility").

3.      Defendant, Joseph Erickson ("Mr. Erickson") (collectively, JBL and Mr. Erickson

are referred to as "Defendants") is an adult and the owner and operator of JBL.  Mr. Erickson

resides at 13250 Cole Road, Atlantic, Pennsylvania 16111.

## JURISDICTION AND VENUE

**A.     This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction"), as Plaintiff is advancing claims under the Fair Labor Standards Act 29, U.S.C. § 201, *et seq*. ("FLSA") (Plaintiff's claim arising under the FLSA is identified as the "Federal Law Claims").

5.      Plaintiff is also advancing claims under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq*. ("MWA") the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq*. ("WPCL") (Plaintiff's claims arising under the MWA and the WPCL are identified as the "State Law Claims").

6.      This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claim and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claim.

7.      Further, the operative facts between the Federal Law Claim and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.     The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

8.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Erie Division (the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.  Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

9.      Specifically, these events and omissions occurred in Crawford County, Pennsylvania which is one of the counties encompassed by the Western District.

10.      This matter is properly before the Erie Division of the Western District given the conduct complained of herein arose in Crawford County, Pennsylvania, and conduct arising within Crawford County is docketed within the Erie Division of the Western District pursuant to Local Civil Rule 3 (LCvR 3).

**C.      This Court May Exercise Personal Jurisdiction Over Defendants.**

11.      Personal jurisdiction is proper over a Defendants if the Defendants are a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

12.      42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This exercise of personal jurisdiction is expanded to "corporations" within 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations. --
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a)(2).

13.      As discussed above, JBL is a limited liability corporation, incorporated under the laws of the Commonwealth of Pennsylvania and accordingly subjected itself to the general

3

jurisdiction of Pennsylvania's tribunals pursuant to 42 Pa C.S. § 5301(a)(2)(i).

14.    Accordingly, JBL may properly be brought before this Court pursuant to 42 Pa. C.S. § 5301(a).

15.    In addition, 42 Pa. C.S. § 5301(a)(1) provides for personal jurisdiction over individuals which states:

> (i) Presence in this Commonwealth at the time when process is served.
> (ii) Domicile in this Commonwealth at the time when process is served.

42 Pa. C.S. § 5301(a)(1).

16.    Upon information and belief, Mr. Erickson is domiciled within the Commonwealth of Pennsylvania.  Further, Mr. Erickson will be served with the Complaint while he is within the geographic confines of Pennsylvania.

17.    Correspondingly, personal jurisdiction as to Mr. Erickson is proper pursuant to 42 Pa. C.S. §§ 5301(a)(i) and 5301(a)(ii).

## FACTUAL BACKGROUND

18.    In April of 2024, Plaintiff commenced his employment with Defendants in the role of a "lineman" (the "Lineman Role").

19.    Within this role, Plaintiff was compensated on a commission basis wherein he earned seven percent (7%) of the gross revenue Defendants received for the work assignments Plaintiff worked.

**B.    Defendants Denied Plaintiff an Overtime Rate of Pay for Pre-Shift Work and for Time Spent Traveling.**

20.    In the ordinary course of Plaintiff's employment, Defendants scheduled Plaintiff for four ten-hour shifts reflecting a "start" time of 7 a.m. and a "stop" time of 5 p.m.

21.    However, Plaintiff routinely worked over 40 hours per week in light of the fact that

4

he and his colleagues (many of which were paid on an hourly basis) arrived at Defendants' facility at 6 a.m., as directed by Defendants to begin preparing the vehicles and equipment for the day (the "Pre-Shift Duties").

22.    Plaintiff's work then consisted of driving said vehicles and equipment to the respective worksites (the "Travel Time Duties").

23.    These worksites were within the western region of Pennsylvania and required Plaintiff and his coworkers to regularly travel at least one hour or more to get to before then departing and returning to the facility.

24.    Therefore, a realistic workday for Plaintiff started at 6 a.m. and continued until 6 p.m. or later depending on the extent of travel required.

25.    In this routine, Plaintiff worked more than 40 hours every seven-day period once the Pre-Shift Duties and Travel Time Duties are accounted for.

26.    Notably, in the early stages of Plaintiff's employment, he questioned Defendants as to whether the time associated with the Travel Time Duties that he and his similarly situated colleagues incurred was compensable.

27.    In response, Defendants' management stated that, "*We're not paying guys just to drive a truck.*"

28.    In the course of Plaintiff's employment, Defendants' managerial personnel routinely reiterated this sentiment when the topic of the Travel Time Duties was raised by Plaintiff or his colleagues.

29.    From April 2024 to September of 2024, Plaintiff was paid on the commission basis described above and was not paid an overtime premium for his hours worked over 40.

30.    In September 2024, Plaintiff's supervisors, Bob Mook ("Mr. Mook") and Mr.

Erickson, asked Plaintiff to assist with "buried drops" to temporarily fill a gap in staffing (the "Buried Drop Work").

31.    Defendants informed Plaintiff that his pay structure would be changed to an hourly basis where Plaintiff would be paid $30 per hour for the Buried Drop Work.

32.    At this time, it was expressly understood that once Plaintiff returned to the Lineman Role that his commission-structure would resume.

33.    Regardless, and without any real choice in the matter, Plaintiff accepted the Buried Drop Work and the pay offered.

34.    In the course of performing the Buried Drop Work, Plaintiff continued the ordinary routine of arriving at 6 a.m. to begin his workday and concluding his workday at 6 p.m. or later.

35.    In light of the change to an hourly basis, Plaintiff was now entitled to an hourly rate for all hours worked including time spent on the Pre-Shift Duties and the Travel Time Duties.

36.    However, Defendants failed to compensate Plaintiff from September 2024 through the end of October 2024 at either a regular hourly rate or an overtime rate of pay for any hours worked in excess of 40 in a seven-day period.

37.    In doing so, countless hours across the course of Plaintiff's (and his coworkers) employment were fundamentally omitted by Defendants for the Pre-Shift Duties and the Travel Time Duties (the "Overtime Rate Denial Practice").

**C.    Defendants Deprived Plaintiff of Compensation for Hours Worked in October of 2024.**

38.    On or about October 14, 2024, while still working under the Buried Drop Work arrangement, Plaintiff arrived at a worksite that the customer cancelled without providing Defendants appropriate notice.

39.    Despite the fact that Plaintiff performed all components of his role, including

6

preparing the equipment and traveling, Defendants omitted this day of work from Plaintiff's payroll.

40.    Plaintiff questioned Mr. Erikson about this omission who merely stated, "*if we don't make money, you don't make money*."

**D.    Defendants Unlawfully Terminated Plaintiff.**

41.    On October 21, 2024, Plaintiff was informed that he would be returning to the Lineman Role.

42.    Correspondingly, Plaintiff was to be paid at the predetermined commission basis.

43.    However, Plaintiff later discovered that Defendants failed to pay him any commission-based earnings and rather continued to pay him an hourly rate of $30.00.

44.    Plaintiff's pay also omitted, again, the time associated with the Pre-Shift Duties and the Travel Time Duties.

45.    On or about October 25, 2024, Plaintiff verbally addressed his concerns regarding Defendants' wage and overtime practices with Mr. Erickson and asked whether legal assistance from a lawyer was necessary to be paid his lawful rate of pay.

46.    However, Mr. Erikson refused to substantively address Plaintiff's concerns.

47.    On October 27, 2024, Plaintiff received a text message from Mr. Mook referencing Plaintiff's "attitude" in reference to his complaints concerning the denial of his lawfully owed wages.

48.    Plaintiff notified Mr. Mook at that time informing him that Plaintiff had contacted an attorney regarding his concerns with his wage issues.

49.    Mr. Mook immediately suspended Plaintiff without pay.

50.    Plaintiff followed up with Mr. Erickson and requested confirmation that he was suspended.

51.    Mr. Erickson, in turn, sent Plaintiff a text message stating, "*well as soon as you told me you were getting a lawyer our conversation is over I will be waiting to here [sic] from your attorney so I can put them in contact with mine and you cannot work until I here [sic] from them…*"

52.    Further, "[i]*f I don't here [sic] from your lawyer within the next day or so I am going to have to fill your spot on the crew*."

53.    Mr. Erickson ended his text message by stating, "[y]*ou wanted a lawyer involved my hands are tied I can't do anything about that YOU contacted one not me per the law I can't have you work I didn't lay you off you chose to get the law involved, so now I can't have you here until this is solved*."

54.    Plaintiff was then terminated.

**COUNT I**
**FAILURE TO REMIT WAGES**
**IN VIOLATION OF THE FLSA**
**29 U.S.C. § 201,** *et seq.*

55.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

56.    Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207.

57.    Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay.  29 U.S.C. § 207.

58.    29 U.S.C. § 207 governs the heightened rate of overtime pay and provides:

> (a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.
> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in

> commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, **for a workweek longer than forty hours** unless such employees receives compensation for his employment in excess of the hours above specified at a rate **not less than one and one-half times the regular rate at which he is employed**.

29 U.S.C. § 207(a)(1) (emphasis added).

59.    Moreover, The Third Circuit recognizes that liability for violations of the FLSA attaches not just to the corporate entity itself, but also to the owners, officers, and supervisory personnel of the organization at issue. *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

60.    The term "commerce" is specifically defined to include activities such as, "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

61.    Further, 29 U.S.C. § 203 identifies when an organization engages in "commerce" sufficient to trigger the FLSA as:

> "Enterprise engagement in commerce or in the production of goods for commerce" means an enterprise that (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1).

62.    In further elaboration of "commerce," the Third Circuit recognized in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982) that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to find the employer was an "enterprise engaged in commerce" pursuant to the FLSA.

9

63.     An "employee" is defined within 29 U.S.C. § 203(e)(1) which states in relevant part: "Except as provided in paragraphs (2), (3), and (4), the term 'employee' means any individual employed by an employer."

64.     The definition of "employee" is also recognized as "exceedingly broad" as to properly effectuate of the remedial purposes of the FLSA. *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015) (citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

65.     29 U.S.C. § 203(g) is to be read in conjunction with 29 U.S.C. § 203(e)(1) and defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g).

66.     To further aid in evaluating whether an individual constitutes an "employee" within the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors in reaching a determination as to the individual's employment status:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanence of the working relationship;
> (6) whether the service rendered is an integral part of the alleged employer's business.

*Martin,* 949 F.2d at 1293 *(*quoting *Donovan v. DialAmerica Mktg., Inc*., 757 F.2d 1376, 1382 (3d Cir. 1985)).

**A.     Defendants are Employers Pursuant to 29 U.S.C. § 203.**

67.     Defendants extended a position-for-hire to Plaintiff with specified duties and work hours.

10

68.     Defendants also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendants.

69.     At all times relevant hereto, Defendants exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

70.     At all times pertinent hereto, Defendants also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

71.     As individuals and entities responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendants "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

72.     As such, Defendants were "employer[s]" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

**B.     JBL is an "Enterprise Engaged in Commerce" Pursuant to 29 U.S.C. § 203.**

73.     Upon information and belief, JBL purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within the Commonwealth of Pennsylvania.

74.     Additionally, as part of its routine business practice, JBL transmitted and received payments and credits from out-of-state venders by and through the use of the internet, digital payment processing services that traverse state lines, and through interstate mail via the United States Postal Service.

75.     Therefore, JBL regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

76.     Upon information and belief, JBL has an annual dollar volume of sales in excess of

11

$500,000.00 given the nature, size, scope, industry, and frequency of services that it has effectuated throughout Pennsylvania.

77. Therefore, JBL satisfies the second prong of 29 U.S.C. § 203(s)(1)(A)(i).

78. Accordingly, JBL is an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 203(s)(1).

79. Given Defendants' status as an "employer," Defendants were mandated to comply with the overtime rate of pay, and record keeping requirements of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 211.

**C.    Plaintiff was an Employee Within the Scope of 29 U.S.C. § 203.**

80. The FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts. 29 U.S.C. § 203(e)(1).

81. At all times relevant hereto, Plaintiff agreed to contribute his time and energy to complete meaningful workplace duties for the financial benefit of Defendants.

82. Plaintiff agreed to complete these duties in exchange for financial remuneration and Plaintiff's completion of these duties was never met with objection from Defendants.

83. Given Defendants' lack of objection to Plaintiff's completion of duties, Defendants "permitted" Plaintiff to work within the definition of "employ" pursuant to 29 U.S.C. § 203(g).

84. Additionally, aided by the six factors enumerated within *Donovan*, delineated above, it becomes even more evident that Plaintiff was an "employee" within the purview of 29 U.S.C. § 203(e)(1).

85. Defendants exerted significant control over the manner in which Plaintiff performed his workplace duties.

12

86.    Defendants delineated the methodologies involved in the completion of Plaintiff's duties, the rate of productivity and the speed at which Plaintiff was to complete his tasks, and designated the specific space in which Plaintiff was to perform his tasks.

87.    Plaintiff possessed no meaningful opportunity for profit nor any financial risk of loss depending on his skill given he was compensated at a determined hourly rate; all the compensation that Defendants disbursed to Plaintiff was derived from hours recorded by Defendants and their wage payment practices, and Plaintiff was dependent on these schemes of compensation for his pay.

88.    Plaintiff was provided the equipment and materials necessary for the completion of all workplace tasks; the completion of his workplace tasks did not require any talents unique to Plaintiff or that were uncommon outside a traditional retail environment.

89.    Plaintiff worked for Defendants from April 2024 to October 2024 in a capacity that regularly involved Plaintiff dedicating more than 40 hours per week to Defendants' operations. Plaintiff's employment was not limited by a specific duration or term of employment.

90.    The workplace duties that Plaintiff completed were an integral component of Defendants' operations given the delivery and installation of materials were necessary for Defendants' business.

91.    As the factors delineated above readily illustrate, the reality of the circumstances surrounding Plaintiff and Defendants' interactions plainly indicate that Plaintiff was an employee for Defendants within the scope of 29 U.S.C. § 203.

**A.    Plaintiff was Denied an Overtime Rate of Pay Pursuant to 29 U.S.C. § 207.**

92.    In September 2024, Defendants' changed Plaintiff's pay scheme to an hourly rate basis.

93.    Specifically, Plaintiff was paid $30.00 per hour when performing the Buried Drop

13

Work. Correspondingly, Plaintiff's overtime rate of pay was then $45.00 per hour.

94. From September of 2024 to October of 2024, Plaintiff continued performing the Pre-Shift Duties and the Travel Time Duties in addition to the Buried Drop Work. Correspondingly, Plaintiff worked in excess of 40 hours per week throughout this time period for Defendants.

95. However, Defendants maintained the Overtime Rate Denial Practice and refused to Pay Plaintiff for the Pre-Shift Duties and the Travel Time Duties.

96. In doing so, Plaintiff was deprived of an overtime rate of pay in violation of the FLSA.

**B.    Plaintiff is Entitled to Liquidated Damages, Attorneys' Fees, and Costs.**

97. 29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorneys' fees.

98. An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942)).

99. Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945)).

100. Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

101. Defendants' willful and knowing actions described hereinabove were the direct and

proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

102.   Defendants are unable to meet their burden of establishing "good faith and reasonable grounds" for their violation of Plaintiff's rights.  This is demonstrated by Defendants' willful animus in flagrantly disregarding their responsibilities and obligations as an employer.

103.   Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

104.   As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed wages.

105.   WHEREFORE, Plaintiff, Trevor Winters, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**FAILURE TO REMIT WAGES**
**IN VIOLATION OF THE MWA**
**43 P.S. § 333.101,** *et seq.*

106.   Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

107.   The MWA mandates a heightened rate of pay for any hour worked in excess of 40 hours per workweek.  *See* 43 P.S. § 333.104.

108.   Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary. . . ."  43 P.S. § 333.104(c).

**A.     Defendants are "Employers" Under the MWA.**

109.    The MWA defines "employer" to include "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe."  43 P.S. § 333.103(g).

110.    The definition of "employer" is expansively construed within the MWA to render a corporate entity, as well as its corporate officers, liable for violations of the MWA.  *See Schneider v. IT Factor Prods.*, CIVIL ACTION NO. 13-5970, 2013 U.S. Dist. LEXIS 173583, at *13 (E.D. Pa. Dec. 10, 2013) (citing *Scholly v. JMK Plastering, Inc.*, No. CIVIL ACTION NO. 07-cv-4998, 2008 U.S. Dist. LEXIS 49958, at *6-7 (E.D. Pa. June 25, 2008)).

111.    As discussed above, Defendants extended a position-for-hire to Plaintiff with specified duties, start times, and pay rates.  Defendants also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendants.

112.    Defendants exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

113.    At all times relevant hereto, Defendants also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

114.    As a business entity and individual responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendants "permitted" Plaintiff to work and thus "employed" Plaintiff per 43 P.S. § 333.103(f).

115.    As such, Defendants are an "employer" pursuant to 43 P.S. § 333 and is therefore liable for violations of the MWA

**C.     Plaintiff was an "Employee" Under the MWA.**

116.    The MWA defines "employe[e]" to include "any individual employed by an

employer."  43 P.S. § 333.103(h).

117.   The definition of "employ" is broadly defined as to "suffer or permit to work."  43 P.S. § 333.103(f).

118.   At all times relevant hereto, Defendants possessed and, in fact, exercised their right to control Plaintiff's job duties, namely with respect to its decisions and directives concerning where, what routes, and what equipment Plaintiff would deliver.

119.   Defendants also exerted significant control over the manner in which Plaintiff performed his workplace duties.  Defendants delineated the methodologies involved in the completion of Plaintiff's duties, denoted his expected rate of productivity, and dictated the speed at which Plaintiff was to complete his tasks.

120.   Plaintiff had no personal financial investment in Defendants' operations.  Nor did Plaintiff have an opportunity to obtain extra renumeration based on the exercise of managerial skill while performing the Lineman Position or performing the Buried Drop Work.

121.   Instead, Plaintiff was compensated at a determined hourly rate while performing Buried Drop Work.  All the compensation that was disbursed to Plaintiff was derived from hours he recorded, and Plaintiff was dependent on Defendants' timekeeping machinations for his pay.

122.   Further, Plaintiff did not utilize his own equipment while working for Defendant, and Defendants supplied Plaintiff with all the supplies and equipment necessary for him to perform his job duties.

123.   Nonetheless, the workplace duties which Plaintiff completed were an integral component of Defendants' day-to-day operations, as evidenced by the amount of overtime and energy that Plaintiff expended during his employment with Defendants.

124.   Finally, Plaintiff was completely dependent on Defendants to provide the work he

17

performed and the equipment he was to deliver. Defendants operated the business, and such business was required in order for Plaintiff to perform his job duties.

125. Therefore, Plaintiff is an "employee" for purposes of the MWA.

**D. Defendants' Implementation of the Overtime Rate Denial Practice Deprived Plaintiff of an Overtime Rate of Pay.**

126. Given Defendants' status as "employer" and Plaintiff's status as an "employee," Defendants were obligated to comply with the overtime rate of pay requirements of the MWA.

127. That is, at all relevant times hereto, Defendants failed to pay Plaintiff one and one-half times his corresponding base rate of pay for any time worked beyond 40 hours in seven-day period. 43 P.S. § 333.104(c).

128. As previously averred, Plaintiff was paid on an hourly rate basis from September of 2024 through to October 2024.

129. Further, within this same time period, Plaintiff performed the Pre-Shift Duties, the Travel Time Duties, and the Buried Drop Work to Defendants' approval and satisfaction.

130. Within the course of this work, Plaintiff routinely and regularly worked in excess of 40 hours per week from September 2024 through October of 2024.

131. Consequently, Plaintiff engaged in hours of work that Defendants were legally obligated to compensate him at the overtime rate of pay.

132. However, as averred above, Defendants explicitly refused to pay Plaintiff any wages for the overtime hours that he worked pursuant to the Overtime Rate Denial Practice depriving Plaintiff of his lawfully owed wages.

133. Therefore, Defendants violated 43 P.S. § 333.104(c) in failing to pay Plaintiff overtime wages.

**E. Plaintiff is Entitled to an Award of Attorney Fees, and Costs.**

134.     In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with 43 P.S. §§ 333.112 and 333.113.

135.     Defendants are liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

136.     As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

137.     WHEREFORE, Plaintiff, Trevor Winters, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## FAILURE TO REMIT WAGES
## IN VIOLATION OF THE WPCL
## 43 P.S. § 260.1 *et seq*.

138.     Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

139.     The WPCL provides the employee with a statutory remedy to enforce his rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

140.     The contract between the employer and the employee governs the determination of the specific wages earned by the employee. *Id.* (citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986)).

141.     This statutory remedy created by the WPCL creates both a private cause of action to any employee to whom "any type of wages" are owed and bestows "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

142.     To recover under the WPCL, a plaintiff must demonstrate: (1) a contractual entitlement; (2) to compensation from wages; and (3) a failure to pay that compensation." *Carlson*

*v. Qualtek Wireless LLC*, No. 22-125, 2022 BL 277728, at \*14 (E.D. Pa. Aug. 10, 2022).

143.   Further, an employee must establish "an implied oral contract between the employee and the employer." *Id.*

144.   The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

145.   The Defendants are a business association and/or corporation that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an employer under 43 P.S. § 260.2a.

146.   As averred previously, Defendants and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an employee.  This factual reality remains true for the purposes of the WPCL as well.

147.   The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements."  43 P.S. § 260.2a.

A.   **Plaintiff and Defendants Engaged in a Contract for Plaintiff's Employment in Exchange for an Hourly Rate of Pay.**

148.   In or around April 2024, Plaintiff and Defendants both agreed, verbally, to enter into an employment contract wherein Plaintiff would provide services and Defendant, following receipt of these services, would compensate Plaintiff on a commission basis wherein he earned seven percent (7%) of the gross revenue Defendants received for the work assignments Plaintiff worked in the Lineman Role.

149.   Both Plaintiff and Defendants accepted the terms of the employment contract wherein Plaintiff began performing his workplace activities and correspondingly Defendants compensated Plaintiff at the commission rate described above.

20

150.    Subsequently, in or around September of 2024, Plaintiff and Defendants both agreed, verbally, to enter into a temporary employment contract wherein Plaintiff would provide Buried Drop Work services and Defendant, following receipt of these services, would compensate Plaintiff on an hourly basis of $30.00 per hour.

151.    Both Plaintiff and Defendants accepted the terms of this subsequent temporary employment contract wherein Plaintiff began performing his workplace activities and correspondingly Defendants compensated Plaintiff at the base hourly rate described above.

152.    It was expressly understood that when Plaintiff was no longer needed for the Buried Drop Work and he returned to the Lineman Role, the commission-structure would resume.

**B.      Plaintiff Has Accrued Owed Compensation From Defendants in the Form of "Wages."**

153.    From September 2024 to October 20, 2024, Plaintiff engaged in the performance of the Buried Drop Work duties for Defendants that was, per the terms of the temporary employment contract, to be compensated at an hourly rate of pay commensurate with the time Plaintiff expended in performance of said duties.

154.    On or about October 14, 2024, Plaintiff arrived at a worksite that was later cancelled.

155.    In arriving to the worksite, Plaintiff performed the Pre-Shift Duties, the Travel Time Duties, and took all reasonable efforts incumbent within his role, that were per Defendants' instruction, to arrive prepared to work at said jobsite.

156.    In doing so, Plaintiff engaged in compensable hours that were in the ordinary course of his position and employment with Defendants.

**C.      Defendants Has Failed to Remit Plaintiff His Owed Wages.**

157.    Following Plaintiff's performance of work on October 14, 2024, Defendants

21

informed Plaintiff that, "*if we don't make money, you don't make money.*"

158.    Correspondingly, Plaintiff was never paid for the hours, at a regular rate of pay, for his time worked on

159.    Defendants were lawfully required to compensate Plaintiff for this time at an amount no less than his regular rate of pay, which at this time was the commission-structure

160.    Further, Defendants failed to compensate Plaintiff the commission rate when he returned to the Lineman Role on October 21, 2024 through his date of separation.

161.    To date, the commission accrued pursuant to the employment contract remain unpaid to present date.

**D.    An Award of Liquidated Damages is Appropriate Given Defendants' Failure to Provide Plaintiff with His Wages.**

162.    Section 260.9a(b), in conjunction with Section 260.10 of the WPCL, permits an employee to institute an action for wages and, further liquidated damages, that are not paid in accordance with the Established Payday Procedure.  These statutory provisions state as follows:

> Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain such action or on behalf of all employes similarly situated.  Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.

43 P.S. §260.9a(b).

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any

22

> wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10.

163.    Per the above statutory provisions, Defendants were legally obligated to provide Plaintiff with his owed wages when he was not paid those wages.  As mentioned, Defendants has refused to compensate Plaintiff with the above-mentioned wages due and owing to him for the performance of his workplace duties.

164.    As such, Defendants have violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

165.    Additionally, Defendants has not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

166.    Defendants' actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

167.    Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

**E.    Plaintiff is Entitled to Reasonable Attorneys' Fees and Costs Incurred in Pursuit of His Unpaid Wages.**

168.    In addition, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the Defendants.

43 P.S. § 260.9a(f).

169.    As such, Plaintiff is also entitled to reasonable attorneys' fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendants' conduct described hereinabove.

170.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed wages.

171.    WHEREFORE, Plaintiff, Trevor Winters, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT IV**
**UNJUST ENRICHMENT**
**UNDER PENNSYLVANIA COMMON LAW**

172.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

173.    Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a Defendants to compensate the plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) (citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995)).

174.    A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a Defendants by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the Defendants under such circumstances that it would be inequitable for the Defendants to retain the benefit without paying its value.  *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995)).

**A.    Plaintiff Conferred a Benefit Upon Defendants by Performing His Workplace Duties and Defendants Appreciated the Benefit Plaintiff Conferred.**

175.    Plaintiff conferred a benefit to Defendants by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of Defendants'

24

enterprise.

176.    Plaintiff's performance of work hours was materially induced and premised on Defendants' representations that Plaintiff's compensation scheme entitled him to Regular and Overtime Pay.

177.    Defendants correspondingly appreciated the benefit of Plaintiff's workplace efforts in that Plaintiff performed various workplace tasks that financially benefited Defendants.

**B.    Defendants Accepted the Benefits Plaintiff Conferred and it is Inequitable for Defendants to Retain Those Benefits Without Compensating Plaintiff.**

178.    Defendants retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

179.    By accepting Plaintiff's labor and services, and not paying Plaintiff for his final week of work and never paying him the minimum overtime rate of pay for hours worked above and beyond 40 in a seven-day period, Defendants have been unduly enriched.

180.    As a matter of justice, it would be manifestly unjust and inequitable for Defendants to retain the benefit of that labor and services without paying Plaintiff due compensation.

181.    Defendants' actions described hereinabove were the direct and proximate cause of Defendants' unjust enrichment and the damages they owe Plaintiff for retaining a benefit without paying for its value.

2.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic losses resultant from the deprivation of lawfully owed wages, and he is entitled to recoup the amount of the benefit he conferred upon Defendants and which Defendants unjustly retained.

182.    WHEREFORE, Plaintiff, Trevor Winters, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

25

**COUNT V**
**RETALIATION IN VIOLATION THE FLSA**
**29 U.S.C. § 201, *et seq.***

183.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

184.    The FLSA provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter…" 29 U.S.C. § 215(a)(3).

185.    This protection extends to the Plaintiff whether or not he or the employer mistakenly believes that he has a valid FLSA claim.

186.    The retaliation provisions are placed in order to protect employees from the fear of economic retaliation for voicing grievances regarding wages.

187.    Here, Defendants retaliated against Plaintiff by terminating him as a result of hiring an attorney regarding the wages owed to him.

188.    The termination of Plaintiff by Defendants in retaliation for asserting his rights to be paid pursuant to the FLSA was willful, retaliatory, and knowingly undertaken by Defendants to deprive Plaintiff of his legal rights to minimum wage and overtime payment as provided in the FLSA.

189.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff is entitled to punitive damages pursuant to the anti-retaliation provisions of the FLSA. 29 U.S.C. § 216(b).

190.    WHEREFORE, Plaintiff, Trevor Winters, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT VI**
**RETALIATION IN VIOLATION THE MWA**
**43 P.S. § 333.101, *et seq.***

191.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

192.    The MWA provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employe[e] has testified or is about to testify before the secretary or his or her representative in any investigation or proceeding under or related to this act, or because such employer believes that said employe may so testify …" 42 P.S. § 333.112(a).

193.    This protection extends to the Plaintiff whether or not he or the employer mistakenly believes that he has a valid MWA claim.

194.    The retaliation provisions are placed in order to protect employees from the fear of economic retaliation for voicing grievances regarding wages.

195.    Here, Defendants retaliated against Plaintiff by terminating him as a result of hiring an attorney regarding the wages owed to him.

196.    The termination of Plaintiff by Defendants in retaliation for asserting his rights to be paid pursuant to the MWA was willful, retaliatory, and knowingly undertaken by Defendants to deprive Plaintiff of his legal rights to minimum wage payment as provided in the MWA.

197.    WHEREFORE, Plaintiff, Trevor Winters, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## JURY DEMAND

198.    Plaintiff demands a trial by jury on all matters so triable.

## *AD DAMNUM* CLAUSE AND PRAYER FOR RELIEF

199.    For the above-stated reasons, Plaintiff, Trevor Winters, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, JB Line Construction, LLC, and prays for relief as follows:

200. Declare and find that Defendants committed one or more of the following acts:

   a) Violated provisions of the FLSA and/or the MWA in failing to compensate Plaintiff at his overtime rate of pay;

   b) Violated provisions of the WPCL in failing to compensate Plaintiff at a regular rate of pay for his work performed;

   c) Violated provisions of the FLSA and the MWA in retaliating against Plaintiff following his wage related complaints; and

   d) Were unjustly enriched at Plaintiff's expense;

201. Award unpaid overtime wages and unpaid wages at the appropriate regular rate or overtime rate of pay and other compensation denied or lost to Plaintiff to date by reason of the unlawful acts described in this Complaint;

202. Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's unpaid minimum and overtime wages pursuant to the FLSA and/or the WPCL;

203. Award punitive damages for willful disregard of state and federal law;

204. Award pre-judgment and post-judgment interest where accorded by law;

205. Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

206. Award injunctive and other equitable relief as provided by law; and

207. Award such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  March 31, 2025

By: */s/ Cynthia A. Howell*
    Kyle H. Steenland (Pa. I.D. No. 327786)
    Erik M. Yurkovich (Pa. I.D. No. 83432)
    Cynthia A. Howell (Pa. I.D. No. 325662)

    The Workers' Rights Law Group, LLP
    Foster Plaza 10
    680 Andersen Drive, Suite 230
    Pittsburgh, PA 15220
    Telephone: 412.910.9592
    Facsimile: 412.910.7510
    kyle@workersrightslawgroup.com
    cynthia@workersrightslawgroup.com

    *Counsel for Plaintiff, Trevor Winters*

29

**<u>VERIFICATION</u>**

I, Trevor Winters, have read the foregoing allegations in the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief.  I understand that this verification is made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

03 / 31 / 2025

Date

Plaintiff, Trevor Winters

30

Doc ID: ab3d72697963284bcd457d2e6f4104e6239649a6

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

/s/ Cynthia A. Howell
Cynthia A. Howell
Pa. I.D. 325662

31